MARIA PAULINE VON WALLHOFFEN, APPELLANT, *v.* RICHARD S. NEWCOMBE AND DAVID LEVENTRITT, RESPONDENTS.

*Attorney — liability of, for malpractice.*

On the 10th of March, 1873, the plaintiff employed defendants to procure a divorce for her from her husband, and agreed to and did pay $1,500, at once, to defray expenses to be incurred by them in proceeding to Berlin to ascertain facts upon which to frame a complaint, and agreed to pay the further sum of $2,000 in case the divorce was obtained in three months from the date of the agreement. An order was procured in the action for the service of the summons by publication, on the ground of the non-residence of the plaintiff's husband. On the 2d of June, 1873, a final decree for divorce was obtained, and the plaintiff, on the 4th of June, paid to the defendants the $2,000, and some few weeks thereafter she remarried.

In August following, the husband applied to have the divorce vacated, and subsequently an order was made allowing him to come in and defend the action on account of gross irregularities committed by the defendants in obtaining the judgment. In this action, brought by the plaintiff to recover the moneys paid under the agreement and damages for malpractice, *held*, (1) that as the plaintiff had paid the money in ignorance of the fact that the judgment had been irregularly obtained, she was entitled to recover the same; (2) that as the judgment had been opened on account of the ignorance and negligence of the defendants, she was entitled to recover the damages sustained by her in consequence thereof.

APPEAL from a judgment in favor of the defendants, entered on the dismissal of the complaint at Circuit.

*Townsend & Reed,* for the appellant.

*Albert Cardozo,* for the respondents.

DAVIS, P. J.:

This action was brought to recover damages for the alleged malpractice of the respondents, as attorneys, and also to recover moneys paid to them as such attorneys, under a special agreement, which it it claimed they had not performed. On the 10th of March, 1873, the appellant, then known as Maria Pauline Lucca, entered into a written agreement with the respondents, whereby she employed them as her attorneys and counselors to procure for her a divorce from her then husband, Adolf von Rhade. She paid to them, on making the agreement, the sum $1,500, which they agreed to accept in full payment for the expenses and services of one of them proceeding to Berlin, for the purpose of examining witnesses to prove facts on which to base a complaint for divorce. The contract then contained the following agreement: "It is hereby further agreed, that in the event of said parties of the second part succeeding in obtaining, and procuring to be obtained a decree of divorce within three months from the day of the date hereof, that said party of the first part will thereupon immediately pay to them the sum of $2,000, which said parties of the second part hereby agree to accept in full payment for all services and expenses appertaining to such proceedings for a divorce."

The appellant alleged in her complaint that on or about the 4th day of June, 1873, the defendants represented to her that they had fulfilled their part of this agreement, and demanded of the plaintiff, and the plaintiff thereupon paid to them, the sum of $2,000, as provided by said agreement. She alleged also that the defendants, by unskillful management and inexcusable negligence, not only failed to procure an effectual judgment, but that she had been subjected to very large damages and expenses by reason of such negligence. On the trial it appeared that the respondents commenced an action for a divorce on or about the 10th of March, 1873, which was the date of the agreement, and of course before they could have gone to Berlin for facts "upon which to base a complaint," as provided in the agreement; that they procured an order for publication of the

summons on the ground of the non-residence of the defendant in the action, and afterwards published the same; and that upon an alleged default to answer, they obtained an order of reference and took proofs, which the referee must have supposed tended to establish the material facts alleged in the complaint; that afterwards, upon the referee's report, and on or about the 2d of June, 1873, they obtained a final judgment, adjudging that the marriage between the appellant and her then husband be dissolved, and that the appellant be at liberty to remarry, and decreeing to her also the custody of her child. Some few weeks afterwards the appellant remarried; and in August following, her former husband, the defendant in the divorce suit, appeared by his attorneys and made a motion to the court to vacate and set aside the judgment in such action of divorce.

Such proceedings were had, that the judgment was opened by the Special Term, and the defendant therein allowed to come in and defend upon terms; and afterwards, on appeal to the General Term, that order was modified so as to allow to the defendant unconditional liberty and right to answer·the complaint in the action, giving him forty days from the entry of the order on appeal to serve his answer, and allowing the appellant to file and serve a supplemental complaint, within twenty days after notice of the order, and the defendant to answer the same within forty days from the service thereof. It was proved that on obtaining the judgment of divorce, the defendants presented a copy of the same to the plaintiff, and . received the $2,000 provided for in the agreement above set forth.

It is obvious, from the papers produced on the trial, that the court below opened the judgment to allow the defendant therein to come in and answer and defend the action, notwithstanding the subsequent marriage of the plaintiff, because of several gross irregularities committed by the defendants in obtaining the judgment. The affidavit upon which the order of publication was obtained was defective in not stating what, if any, diligence had been used to find the defendant within this State. The order directed the publication of the summons "thereto annexed;" the summons then annexed required the appearance of von Rhade within six days. The order of reference was obtained from the court before the expiration of the time for the defendant in the action to appear and answer. On the hearing before the referee, no evidence of the

adulteries alleged in the complaint was produced, but evidence was produced tending to prove adulteries committed after the commencement of the action. The judgment roll was entered without containing the summons in the action. These several things were irregularities which could only be attributable to gross negligence on the part of the attorneys; and they showed a state of facts which, if known to the appellant before the payment of the $2,000, under the agreement, would have constituted a perfect defense to an action to recover that sum. In *Hopping* v. *Quin* (12 Wend., 517), the court held that an attorney cannot recover against his client for the costs of a suit in which the judgment is set aside for irregularity; nor the costs of opposing the motion to set aside the proceedings; nor can he recover for money paid for his client, if it be paid to satisfy the costs of a judgment of discontinuance suffered by his negligence or ignorance. The evidence in this case tended strongly to show that all these irregularities were unknown to the appellant at the time the certified copy of the judgment was presented to her by the respondents; and that she made payment of the $2,000, under the agreement, believing that it had been fully performed by the defendants, and that her divorce was effectual and complete. She was afterwards married, as appeared in the case, to her present husband; and at such marriage the respondents, as appeared by the certificates put in evidence, were present as witnesses.

It is manifest that the fact of the unfortunate position in which the appellant was placed by her second marriage, alone prevented the court, upon the motion, from absolutely vacating the decree. It did, however, in the disposition of the motion, put the judgment in such a condition that it will be of no avail to the plaintiff unless, upon the subsequent contested trial, she establishes against her former husband the acts of adultery alleged in the original or supplemental complaint. This state of facts tends strongly, if not conclusively, to establish that at the time the $2,000 were paid on the agreement, the respondents were not entitled to receive any portion of it; and that the appellant paid it in good faith, believing that the agreement had been fully performed, and relying upon acts on the part of the respondents which amounted to representations, that the decree or judgment required by the agreement had been regularly and properly obtained. Upon such a state of facts, there

seems to be no doubt that the appellant was entitled to go· to the jury upon the question whether the $2,000 had not been paid to the respondents without consideration, and upon substantial misrepresentations.

In respect of so much of the action as relates to damages for the alleged malpractice, the evidence, it seems to us, was sufficient to have been submitted to the jury upon that question. "Every person who enters a learned profession, undertakes to bring to the exercise of it a reasonable degree of care and skill. He does not undertake, if he is an attorney, that, at all events, you shall win your case; nor does he undertake to use the highest possible degree of skill; but he undertakes to bring a fair, reasonable and competent degree of skill." (*Lanphier* v. *Phipos*, 8 Carr & Payne, 475; *Hancke* v. *Hooper*, 7 id., 84; *Shilcock* v. *Passman*, id., 289; *Pitt* v. *Yalden*, 4 Burr, 2060.) The law requires that every attorney and counselor shall possess and use adequate skill and learning, and that he shall employ· them in every case, according to the importance and intricacy of the case; and if a cause miscarries in consequence of culpable neglect or gross ignorance of an attorney, he can recover no compensation for any services which he has rendered, but which were useless to his client by reason of his neglect or ignorance. (*Gleason* v. *Clark*, 9 Cow., 57; *Hopping* v. *Quin*, *supra.*)

An attorney must be presumed to be familiar with the law and rules regulating the practice in actions which he undertakes to bring. This part of the business of the practice of law pertains especially to the duties of an attorney. It is, substantially, merely clerical or mechanical in its character; and ignorance of the law and rules of practice, on the part of attorneys, or negligence in conforming to them in obtaining judgments, are altogether inexcusable. Such ignorance and negligence subject an attorney to actions for injuries which their clients may sustain.

Another rule prevails for acts done in their relation of counselors, when called upon to give advice upon questions of law. In such cases the liability only arises for gross ignorance or negligence; and in performing the duties of counsel the attorney is not liable for errors in judgment upon points of new occurrence, or those of nice and doubtful construction. (*Godefroy* v. *Dalton*, 6 Bing., 468.)

It was held, in *Galpin* v. *Page* (18 Wall. [U. S.], 350), that the law imputes knowledge to an attorney, of defects in legal proceedings for the sale of property taken under his direction. In *Kemp* v. *Burt* (4 Barn. & Ad., 424) it was held to be actionable negligence to lay the venue in a wrong county. In *Williams* v. *Gibbs* (5 Ad. & El., 208) it was held that to bring an action in a court which had no jurisdiction subjected the attorney to liability.

In *Smedes* v. *Elmendorf* (3 Johns., 185) it was held that delay in bringing an action until too late, so that the claim was lost, would render the attorney liable. In *Varnum* v. *Martin* (15 Pick. [Mass.,] 440) the attorney was held liable for omitting to insert in a writ the full amount of his client's claim, whereby the latter sustained a loss. The cases on this subject are quite fully collected in Wait's Actions and Defenses (vol. 1, 459) and also in Wait's Practice (vol. 1, 242).

It is apparent that the judgment in the divorce suit was not opened as a mere *matter of favor* to the defendant therein. The court would not have been likely to do that where it appeared that the plaintiff had remarried in good faith, relying upon the judgment; but it was opened because of gross irregularities. The justice, at Special Term, said : " The irregularities in this case are so palpable that they should not be sanctioned, so far as to shut out any actual defense, if a just and meritorious defense exists and can be proved."

And, in speaking of one of these irregularities, Mr. Justice DANIELS, at General Term, said : " That was an inexcusable irregularity, indicating a gross inattention to the condition of the proceedings on the part of the plaintiff's attorney." And again, he said, " the proceedings in the action abound in such defects and irregularities, that ordinarily they would require the court to set aside the judgment. It was in tenderness to the peculiar position of the plaintiff in this action that the judgment was not altogether set aside."

In these days, when lawyers are made with such easy and rapid facility, their unfortunate clients ought not to be deprived of such protection as the right of action for *malpractice* can secure.

In respect to the introduction of proof before the referee, of adulteries committed long after the action was commenced, it is a mild form of description to say that the act of the attorneys was a gross irregularity. Upon the question of actionable negligence or

ignorance of the attorneys, there was abundance of evidence to require the submission of the case to the jury. There was proof of very heavy expenses incurred by the appellant by reason of such negligence. It is not necessary to consider how much of this can be recovered as a just measure of damages in the case. It is enough that the appellant has shown herself entitled to some measure of damages, in case the jury find that the actionable conduct of the defendants was such as subjected her to any damages.

The complaint ought not to have been dismissed. The judgment entered upon the dismissal must, therefore, be reversed and a new trial ordered, with costs to abide event.

DANIELS, J., concurred; BRADY, J., concurred in the result.

Judgment reversed, new trial ordered, costs to abide event.